IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LARRY M. PADILLA,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br><br>                    Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No.  1:15-cv-00047-RJS-EJF<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Larry M. Padilla ("Mr. Padilla") filed this action asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying his application for disability insurance benefits and supplemental security income alleging disability beginning on October 20, 2011. (Pl.'s Opening Br. ("Pl.'s Br.") 1, 15, ECF No. 14.)  The ALJ determined that Mr. Padilla did not qualify as disabled under 42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3)(A) of the Social Security Act ("Act").  (Administrative R. ("R.") 18, 27-28, ECF No. 9.)  Having carefully considered the parties' memoranda and the complete record in this matter,[1] the undersigned Magistrate Judge[2] RECOMMENDS the District Judge affirm the Commissioner's decision.

---

[1] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the undersigned finds oral argument unnecessary and will make its recommendation on the basis of the parties' written memoranda.

[2] On March 25, 2015, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 7.)

## I. FACTUAL AND PROCEDURAL HISTORY

On November 15, 2011, Mr. Padilla applied for disability insurance benefits under Title II and supplemental security income under Title XVI.  (R. 18.)  Mr. Padilla alleged three impairments:  a missing right thumb, pneumonia, and stage I colon cancer.  (R. 222.)  The Commission denied the claims on April 25, 2012, and again upon reconsideration on July 5, 2012.  (R. 18.)  On July 13, 2012, Mr. Padilla filed a written request for a hearing before an ALJ.  (R. 18.)  The ALJ held the hearing on June 11, 2013, in Salt Lake City, Utah, for which Mr. Padilla appeared.  (R. 18.)

At the hearing, Mr. Padilla testified he graduated from high school and subsequently lost mobility in his right thumb in 2000, which made finding work difficult given his reduced strength and dexterity.  (R. 24, 34-35, 61-62.)  Since his injury, Mr. Padilla learned to use his left hand for most tasks.  (R. 24, 36.)

Mr. Padilla had surgery to remove colon cancer in October 2011 and chemotherapy from January to May 2012, leaving him fatigued, weakened, and at increased risk of infection.  (R. 24, 38, 303.)  Mr. Padilla worries his cancer will return "because cancer runs in his family."  (R. 24, 38.)

Mr. Padilla testified he experiences pain and nausea but has not taken any prescription pain medications since May 2012.  (R. 24, 39.)  Since July 2012, Mr. Padilla has taken one bottle of Zoloft for his depression and anxiety but has since stopped because he "didn't like it."  (R. 64, 490.)  Mr. Padilla claims his indigence prevents him from obtaining other medication for his depression and from seeing his psychiatrist more frequently.  (R. 59, 64.)  Mr. Padilla's name currently sits on the waiting list for PCN, a low-cost insurance program.  (R. 64-65.)

Mr. Padilla further testified he can lift up to a gallon of milk, or about eight and a half pounds.  (R. 25, 54-55.)  He contends he can only walk for about a block before needing to rest and has difficulty sitting at times because of pain and inflammation that he treats with Preparation H.  (R. 25, 48-49.)  He reports sitting more than he stands.  (R. 49.)  Since Mr. Padilla finished chemotherapy in May 2012, he has suffered most from fatigue, depression, anxiety, and headaches in that order.  (R. 63-66.)

After the hearing, the ALJ determined that the record required further development and ordered a medical consultative examination.  (R. 18.)  On September 14, 2013, Dr. Monson performed a consultative examination of Mr. Padilla.  (R. 18.)  Dr. Monson concluded Mr. Padilla had a limited range of motion and decreased strength in his right thumb that "severely limits his ability to grasp, handle, and perform fine motor movements with his right hand."  (R. 532.)  However, Mr. Padilla now functions left-handed and can perform motor skills with his left hand.  (R. 532.)  Dr. Monson noted that Mr. Padilla contracted pneumonia while hospitalized for colon cancer surgery but opined that the pneumonia did not cause any permanent limitations.  (R. 532.)  Dr. Monson could not give a definite diagnosis with regards to Mr. Padilla's colon cancer as he did not have records to review, but he noted that Mr. Padilla had abdominal pain and pain radiating to his right groin potentially from recurrent herniation, which would limit his lifting, bending, and squatting.  (R. 532.)  Dr. Monson opined that these limitations would not prevent Mr. Padilla from performing a desk job.  (R. 532.)

The ALJ issued his decision on December 6, 2013.  (R. 28.)  Based on the five-step sequential evaluation process for determining disability, the ALJ found that Mr. Padilla has four severe impairments:  "1) history of low-grade invasive adenocarcinoma status post hemicolectomy with some residuals, 2) history of surgically repaired hernia, 3) amputation of the

right thumb, with right thumb degenerative joint disease, and 4) situational major depression and anxiety."  (R. 21.)  In step three, the ALJ found none of these impairments or a combination thereof meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 21.)  In step four, the ALJ found that from the alleged onset date to the date of the ALJ's decision, Mr. Padilla had the residual functional capacity ("RFC") to perform light unskilled work but that such work could not have required:  (1) "lifting more than 8.5 pounds at a time with the left upper extremity, on more than an occasional basis"; (2) "lifting and carrying articles weighing more than 8.5 pounds with the left upper extremity, on more than an 'occasional' basis;" (3) "standing or walking more than 45 minutes at one time, nor more than six total hours in an 8-hour workday;" (4) "sitting more than 15 minutes at one time, nor more than two total hours in an 8-hour work day;" (5) "more than occasional stooping, bending, twisting or squatting;" (6) "working on the floor (e.g. no kneeling, crawling or crouching);" (7) ascending or descending full flight of stairs"; (8) "overhead lifting or overhead reaching;" (9) "more than frequent reaching, frequent handling, or frequent fingering with the left upper extremity, or any duties requiring feeling with the left upper extremity;" (10) "working in an area without a restroom nearby for quick access, and claimant must have the option to take the maximum number of restroom breaks allowed;" (11) "working at more than a low stress level, which means:"  (i) "a low production level (where VE classified all SGA jobs as low, average or high production)," (ii) "no working with the general public," (iii) "only occasional contact with supervisors and co-workers on the job, but still having the ability to respond appropriately to supervision, co-workers and typical work situations, and" (iv) "the ability to deal with only occasional changes in a routine work setting;" (12) "working at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only

unskilled work tasks;" (13) "work at more than a low memory level, which means:" (i) "the ability to understand, remember and carry out only 'simple' work instructions (where 'simple' is defined as functioning at GED levels of only – Reasoning:  3, Math: 2, Language: 2)," (ii) "the ability to remember and deal with only rare changes in the work instructions from week to week, and" (iii) "the ability to remember and use appropriate judgment in making only 'simple' work related decisions"; (14) "[p]reclusion of the option to drink/hydrate on the job."  (R. 22-23.)  The ALJ also notes that Mr. Padilla can only use his right upper extremity "as a helper hand, e.g. no writing with the right upper extremity."  (R. 22.)  Furthermore, the ALJ required that Mr. Padilla had to have a "sit/stand" option, giving him the ability to perform work while sitting or standing. (R. 22.)

The ALJ gave "great weight" to Dr. Monson's opinion in making these findings as well as "substantial weight" to the opinions of Dr. Barton and Dr. Peterson, two state agency physicians. (R. 25-26.)  All three physicians considered Mr. Padilla's alleged impairments in their assessments, which did not include Crohn's enteritis.  (R. 79, 101, 528.)

Notably, the ALJ did not specifically discuss any opinions of Mr. Padilla's treating physicians.  (*See* R. 18-28.)  The parties attribute a medical note on May 1, 2012 to Dr. White. (Pl.'s Br. 8, ECF No. 14; Def.'s Answer Br. ("Def.'s Br.") 8, ECF No. 22.)  The medical note states "[Mr. Padilla] has been denied SS due to [the] misconception that he is Stage I disease[;] he currently has Stage II disease High risk [and] has begun chemotherapy. . . .  The side effects [chemotherapy] has made it difficult if not impossible to consider full time employment."  (R. 499.)

The undersigned's review of the administrative record reveals that this medical note comes from Utah Hematology Oncology, P.C.  The transcript index lists exhibit 12F as Utah

5

Hematology Oncology, P.C. records including R. 492-500, which includes the record at issue, R. 499.  Dr. White is a doctor with Midtown Community Health, not Utah Hematology Oncology, P.C.  (R. 502-03.)  Dr. White's signature appears at R. 503.  This signature bears no resemblance to the signature on the record at issue.  (*Cf.* 499 with 503.)  The record at issue appears similar to other Utah Hematology Oncology, P.C. records both in format and handwriting.  (*Cf.* R. 499 with 497, 500.)  Joseph Hansler, M.D., from Utah Hematology Oncology, P.C. treated Mr. Padilla along with Deanna L. Bojanower, ANP-C, AOCN.  (R. 494-96.)  In looking at the signature on R. 499, it appears most similar to Nurse Practitioner Bojanower's.  (*Cf.* R. 499 with 496.)

After summarizing Mr. Padilla's reported symptoms, the ALJ found Mr. Padilla's medically determinable impairments could reasonably cause the alleged symptoms but concluded Mr. Padilla's statements concerning the intensity, persistence, and limiting effects of the symptoms lacked complete credibility.  (R. 24-25.)  The ALJ explained that Mr. Padilla had received successful cancer treatment and did not qualify as disabled for twelve consecutive months from that treatment.  (R. 25.)  Mr. Padilla stopped chemotherapy in May 2012, within a year from his alleged onset date.  (R. 25.)  As for his depression and anxiety, the ALJ noted that Mr. Padilla has never been hospitalized for these conditions and does not have a treating psychiatrist or psychologist.  (R. 25.)  During a doctor's visit on March 20, 2012, Mr. Padilla indicated that he felt depressed only occasionally and did not want any medication for this condition.  (R. 25, 526.)  Lastly, the ALJ noted Mr. Padilla testified he no longer takes any prescription pain medications.  (R. 25, 39.)

The ALJ went on to find Mr. Padilla could not perform any past relevant work, but considering his age, education, work experience, and RFC, Mr. Padilla can perform a significant number of jobs existing in the national economy.  (R. 26.)  The ALJ relied on the vocational

6

expert's ("VE") testimony that a hypothetical individual with the claimant's age, education, work experience, and RFC could perform the requirements of representative occupations such as office helper, router, and routing clerk.  (R. 27, 75-76.)  The VE testified that approximately 83,000 office helper jobs, 53,000 router jobs, and 43,000 routing clerk jobs exist in the national economy.  (R. 27, 76.)  Given the specific limitations of the hypothetical RFC, the VE reduced the number of jobs available to Mr. Padilla by 80%, 90%, and 95% respectively.  (R. 27, 76.)  The ALJ found that even after these reductions, a significant number of such jobs continue to exist in the national economy that Mr. Padilla could perform.  (R. 27.)  Therefore, the ALJ found Mr. Padilla not disabled under the five-step framework.  (R. 27.)

The Appeals Council denied Mr. Padilla's request for review of the ALJ's decision on February 9, 2015.  (R. 1.)  Subsequently, Mr. Padilla filed this action on March 17, 2015.  (Compl. 4, ECF No. 3.)

## II. STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner.  Where the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of review.  *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards.  42 U.S.C. §405(g); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly

contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[3]  The standard "requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).  The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007).  The court does not have to accept the Commissioner's findings mechanically but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI.  *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

### III. ANALYSIS

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the Social Security Administration ("SSA") employs a five-part sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and

(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

20 C.F.R. §§ 404.1520, 416.920.  The claimant has the initial burden of establishing the disability in the first four steps.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy.  *Id.*

Here, the ALJ found Mr. Padilla not disabled at step five, because given his age, education, work experience, and RFC, sufficient jobs exist in the national economy that he can perform.  (R. 26.)  The ALJ relied on the VE's testimony that a hypothetical individual with the same limitations as Mr. Padilla could perform the requirements of an officer helper, router, and routing clerk, all of which exist in significant numbers in the national economy.  (R. 27, 76.)  Mr. Padilla takes issue with the ALJ's RFC determination.  Specifically, Mr. Padilla argues that the ALJ erred by (1) failing to evaluate the medical opinion evidence of his treating physician properly, (2) failing to provide substantial evidence to support his finding that Mr. Padilla can perform light work, and (3) finding Mr. Padilla not entirely credible.  (Pl.'s Br. 7-15, ECF No. 14.)[4]

**A.     Mr. Padilla's Credibility**

Mr. Padilla argues that substantial evidence does not support the ALJ's credibility analysis.  (Pl.'s Br. 11-12, ECF No. 14.)  While the ALJ found Mr. Padilla's medically determinable impairments could reasonably cause his alleged symptoms, the ALJ also found Mr. Padilla's statements concerning the intensity, persistence, and limiting effects of the symptoms

---

[4] By addressing only these points of alleged error in his opening brief, Mr. Padilla waived any additional challenges to the ALJ's decision because doing so deprives the opponent of the opportunity to address the arguments.  *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (failing to raise appeal issues in opening brief waives those points).

not entirely credible.  (R. 25.)  The ALJ reasoned that (1) Mr. Padilla received successful cancer treatment for less than one year after his alleged onset date; (2) Mr. Padilla has never been hospitalized for depression or anxiety, is not under the care of a psychiatrist or psychologist, and did not want any medication for his condition; and (3) Mr. Padilla no longer takes any prescription pain medication.  (R. 25.)

Mr. Padilla argues that the ALJ's first rationale oversimplifies the situation by failing to address the side effects of his chemotherapy as well as his Crohn's enteritis and pneumonia. (Pl.'s Br. 12-13, ECF No. 14.)  As for his depression and anxiety, Mr. Padilla argues he cannot afford to see his psychiatrist.  (Pl.'s Br. 13-14, ECF No. 14.)  Mr. Padilla points out that Social Security Ruling 82-59 precludes a finding of disability merely because a claimant cannot afford treatment.  (*Id.*)  Lastly, Mr. Padilla contends that the record indicates he does not use pain medications other than those available over the counter to avoid addiction.  (*Id.*)

While credibility determinations fall under the purview of the factfinder, findings as to credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions.  *Id.*  To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted).  But this analysis "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ determined that Mr. Padilla's cancer was successfully treated and not disabling for twelve consecutive months because he stopped chemotherapy in May 2012, well within a year from his alleged onset date of October 2011.  (R. 25.)  For an impairment to qualify as a medically determinable impairment under the Act, it must last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 404.1527(a)(1), 416.909, 416.927(a)(1).  Because neither Mr. Padilla's cancer nor his chemotherapy lasted twelve months, they do not qualify as medically determinable impairments and hence do not factor into the ALJ's analysis.  *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.927(a)(1).  The ALJ did consider the cancer history (R. 21), and residual impacts including diarrhea and hydration as reported by Mr. Padilla.  (R. 22-26.)  As for the lesions on Mr. Padilla's liver and the chemo port left inside him, no record evidence indicates how these facts could contribute to Mr. Padilla's symptoms.  An ALJ must discuss the uncontroverted evidence he chooses not to rely upon and any significantly probative evidence he rejects, but an ALJ does not have to discuss every piece of evidence. *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007).  Because Mr. Padilla does not show how evidence of his lesions and chemo port impact the ALJ's credibility findings, he fails to show the ALJ erred by not discussing them.

Because Mr. Padilla's pneumonia and the shortness of breath did not last for more than twelve months, the ALJ did not err by failing to discuss these impairments in his credibility analysis.  *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.927(a)(1).  Furthermore,

Mr. Padilla neither alleged Crohn's enteritis in his disability application nor brought up the issue at all at his disability hearing.  (*See* R. 29-78, 222.)  When a claimant appears represented by counsel at a disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."  *Hawkins. v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  Hence, because Mr. Padilla's own counsel failed to raise the Crohn's issue at the hearing, Mr. Padilla cannot fault the ALJ for not discussing the issue in his credibility analysis.  *See id.* at 1167-68 (citing *Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994)).

Moreover, the ALJ addressed the symptoms Mr. Padilla claims to have from Crohn's enteritis in evaluating Mr. Padilla's credibility and limitations.  Mr. Padilla alleges that Crohn's can cause pain, fatigue, and diarrhea.  (Pl.'s Br. 13, ECF No. 14.)  The ALJ explained that he does not find Mr. Padilla's pain entirely credible because he no longer takes prescription pain medications.  (R. 25.)  The ALJ also gave considerable weight to Mr. Padilla's allegations of fatigue and diarrhea, for he limited his RFC findings to jobs with low stress, concentration, and memory level along with the option for Mr. Padilla to take the maximum number of restroom breaks and the ability to hydrate.  (R. 22-25.)

Next, with regards to his depression and anxiety, Mr. Padilla contends that the record does not support the ALJ's findings.  (Pl.'s Br. 13-14, ECF No. 14.)  Mr. Padilla points out that while he initially did not want medication, he began using medication after a follow-up visit with Dr. White.  (Pl.'s Br. 13, ECF No. 14; R. 490.)  Mr. Padilla testified that he stopped using the medication because it made him feel worse and that he could not try a different medication because he no longer had insurance.  (R. 64-65.)  Mr. Padilla wants to see his psychiatrist more often for treatment but currently cannot afford the visits.  (R. 59.)  Mr. Padilla remains on the

waiting list for PCN, a low-cost insurance program.  (R. 64-65.)  Accordingly, Mr. Padilla argues that the Social Security Rulings preclude a finding of no disability merely because a claimant cannot afford treatment.  (Pl.'s Br. 14, ECF No. 14.)

Social Security Ruling 82-59 addresses how to consider a claimant's failure to follow prescribed treatment.  SSR 82-59, 1982 WL 31384 (Jan. 1, 1982).  The Ruling makes the inability to afford prescribed treatment when free community resources remain unavailable a justified basis for failing to follow the prescribed treatment and precludes a finding of no disability.  *Id.* at *3-4.  The Tenth Circuit has held that this ruling does not preclude an ALJ from considering what attempts the claimant has made to relieve his medical condition simply because the claimant cannot afford treatment.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding that "the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling").

The ALJ did not deny Mr. Padilla disability benefits for his failure to follow prescribed treatment, but rather, like the ALJ in *Qualls*, the ALJ considered what steps Mr. Padilla took to alleviate his condition before ultimately concluding that the limiting effects of his conditions were not as severe as Mr. Padilla alleged.  (R. 25.)  The record indicates that in March 2012, Mr. Padilla reported only feeling depressed occasionally and did not want any medication.  (R. 25, 504.)  He began taking Zoloft after a July 2012 visit with Dr. White but stopped after the first bottle because he "didn't like it."  (R. 64, 490.)  Thus, record evidence supports a basis other than lack of resources for Mr. Padilla failing to take mental health medication.

Lastly, Mr. Padilla contends that the ALJ improperly discounted his testimony with regards to his pain.  (Pl.'s Br. 14, ECF No. 14.)  Mr. Padilla testified that he stopped taking pain

medication in May 2012 because he "didn't want to get addicted to pills."  (R. 39.)  Based on this

testimony, the ALJ concluded that Mr. Padilla does not have pain as severe as he alleges.  (R.

25.)  Thus, the record supports two different interpretations.  The Court may not second guess the

ALJ's credibility findings if substantial evidence supports them.  42 U.S.C. § 405(g); *Wilson*, 602

*F.3d at 1140*.  Therefore, having considered all of Mr. Padilla's arguments regarding the ALJ's

credibility analysis, the undersigned RECOMMENDS the District Judge find that substantial

evidence supports the ALJ's credibility findings.

**B.**     **Evaluation of Medical Evidence**

Mr. Padilla argues the ALJ erred by failing to discuss the opinion of a treating physician

expressed in treatment notes from May 1, 2012.  (Pl.'s Br. 8, ECF No. 14.)  During a May 1,

2012 examination, Nurse Practitioner Bojanower noted that the SSA denied Mr. Padilla benefits

due to the misconception that he had stage I colon cancer, when he had stage II colon cancer.  (R.

499.)  The notes further stated that "[t]he side effects [chemotherapy] has made it difficult if not

impossible to consider full time employment."  (R. 499.)  Mr. Padilla argues that because these

statements relate to the severity of his illness and his functional limitations, the ALJ's failure to

reference and assign weight to these statements constitutes reversible error.  (Pl.'s Br. 8-9, ECF

No. 14.)

In response, the Commissioner contends that not only did the ALJ expressly state that he

carefully considered all the evidence in the record, but the treatment note also lacked any specific

findings regarding Mr. Padilla's functional capabilities.  (Def.'s Br. 8-9, ECF No. 22.)  The

Commissioner argues that because the statement regarding Mr. Padilla's ability to perform full

time work concerns an issue reserved to the Commissioner, the ALJ need not afford it any

special significance.  (Def.'s Br. 10, ECF No. 22.)  As for the statement that Mr. Padilla had stage

II, not stage I, cancer when the SSA denied his application, the Commissioner argues that the record contains conflicting diagnoses with regards to the stage of Mr. Padilla's cancer.  (Def.'s Br. 9, ECF No. 22.)

Mr. Padilla argues that the state agency physicians as well as Dr. Monson, the consulting physician, based their opinions in part on the erroneous belief that Mr. Padilla had stage I colon cancer.  (Pl.'s Br. 9, ECF No. 14.)  Mr. Padilla asserts that the ALJ's giving substantial and great weight to these opinions respectively calls into question whether substantial evidence supported the ALJ's decision.  (*Id.*)  Moreover, none of the physicians' opinions mentions Mr. Padilla's Crohn's enteritis or the scarring on his lungs resulting in shortness of breath and fatigue from his bout with pneumonia.  (Pl.'s Reply Br. ("Reply") 4-5, ECF No. 23.)

With regards to his Crohn's, the Commissioner argues that Mr. Padilla does not have a definitive diagnosis and that while the state physicians and Dr. Monson did not opine that Mr. Padilla had limitations on this basis, the ALJ still limited Mr. Padilla to light work and required that he have easy access to a restroom with frequent restroom breaks.  (Def.'s Br. 11-12, ECF No. 22.)  Finally, regarding the lung scarring, the Commissioner argues that the majority of complaints of shortness of breath occurred in 2011, during the time Mr. Padilla had pneumonia, and by 2013, Mr. Padilla reported to Dr. Monson that he only experienced shortness of breath with heavy exertion.  (Def.'s Br. 11, ECF No. 22.)

### 1. Nurse Practitioner Bojanower's Opinions

An ALJ must evaluate every medical opinion and should give a treating physician's medical opinion controlling weight if the ALJ finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c), 416.927(c).  When the ALJ does not

give the treating physician's opinion controlling weight, he should determine the weight to give

the opinion by applying the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship, including the treatment provided and the
> kind of examination or testing performed; (3) the degree to which the physician's opinion
> is supported by relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon which an opinion
> is rendered; and (6) other factors brought to the ALJ's attention which tend to support or
> contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  After considering the applicable

factors, the ALJ must explain the weight he gives the opinion.  *Id.*  If the ALJ completely rejects

the treating physician's opinion, he must give "specific, legitimate reasons" to explain his

decision.  *Id.* (internal quotations omitted).

The list of acceptable medical sources that can provide medical opinions does not include

nurse practitioners.  20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d).  Nonetheless, the ALJ must

consider opinions from medical sources who do not qualify as acceptable medical sources and

employ the same factors to analyze them.  *Parent v. Colvin*, 67 F. Supp. 3d 1254, 1259 (D. Colo.

2014) (reviewing ALJ's analysis of a nurse practitioner's opinion); SSR 06-03p, 2006 WL

2329939, at *5 (Aug. 9, 2006).  Courts do not require the ALJ to discuss explicitly each of these

factors.  *Nichols v. Astrue*, 341 F. App'x 450, 453 (10th Cir. 2009).  Courts only require that they

can "follow the adjudicator's reasoning, when such opinions may have an effect on the outcome

of the case."  *Id.* (quoting SSR 06-03p at *6).

Here, Mr. Padilla alleges the ALJ erred by not discussing the statements in his decision.

(Pl.'s Br. 8, ECF No. 14.)  While Mr. Padilla reported on his disability application that he had

stage I colon cancer, the record includes medical evidence indicating that Mr. Padilla had stage II

colon cancer at the time.  (R. 430, 433, 499.)  Nurse Practitioner Bojanower's statement that the

SSA denied Mr. Padilla social security benefits based on the erroneous belief that he had stage I instead of stage II colon cancer would not qualify as a medical opinion, even if it came from an acceptable medical source, however.  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Nurse Practitioner Bojanower's opinion about why the SSA denied Mr. Padilla benefits reflects speculation about a non-medical topic.  As a result, the ALJ had no obligation to analyze what weight the opinion deserves.

Nurse Practitioner Bojanower goes on to state that "[t]he side effects [chemotherapy] has made it difficult if not impossible to consider full time employment."  (R. 499.)  This statement also fails to qualify as a medical opinion even if it came from an acceptable medical source because the Regulations explicitly note that statements from medical sources concerning whether a claimant is "disabled" or "unable to work" do not constitute medical opinions.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  This type of opinion constitutes an "opinion[] on issues reserved to the Commissioner."  20 C.F.R. §§ 404.1527(d), 416.927(d).  Such an opinion does not merit "any special significance."  *Id.* §§ 404.1527(d)(3), 416.927(d)(3).  Nonetheless, a medical source's opinions "on issues reserved to the Commissioner must never be ignored."  SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).  Because SSR 06-03p, at *2 refers to nurse practitioners as medical sources who do not qualify as acceptable medical sources, the undersigned can only conclude that the ALJ must consider these opinions under SSR 96-5p.

The ALJ's failure to discuss Nurse Practitioner Bojanower's opinion constitutes error.  *See Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328-29 (D. Utah 2006) (recognizing "opinions

from non-medical sources who have seen the individual in their professional capacity should be evaluated by using the applicable factors"); *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1174-75 (D. Colo. 2012) (holding the ALJ erred where ALJ's decision does not indicate he properly evaluated a nurse practitioner's opinion that claimant was "unable to work" using the applicable factors). Nevertheless, where an error is "minor enough not to undermine confidence in the determination of th[e] case," courts will find the error harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993)).

Even had the ALJ considered Nurse Practitioner Bojanower's opinion, the Regulations would not have allowed the ALJ to afford it "any special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Hence, in *Cowan v. Astrue*, the Tenth Circuit held that an ALJ did not err in failing to articulate specific, legitimate reasons for rejecting a treating physician's opinion concerning a claimant's ability to return to work. 552 F.3d 1182, 1188-89 (10th Cir. 2008). The treating physician there opined that the claimant "'had a *stroke* and I feel he may never return to work.'" *Id.* at 1188. The Tenth Circuit held that such a statement did not constitute a true medical opinion because it did not contain the physician's "judgment about the nature or severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform." *Id.* at 1189. Similarly, in *Busby v. Barnhart*, the District of Kansas held that an ALJ did not err by refusing to fully credit a consultative physician's opinion that the claimant's mental limitations severely impaired her ability to work because the opinion constituted "a legal conclusion that is reserved to the Commissioner." 325 F. Supp. 2d 1221, 1225-27 (D. Kan. 2004).

Nurse Practitioner Bojanower's opinion regarding the Mr. Padilla's ability to work full time does not address the nature and severity of Mr. Padilla's impairment but the ultimate

question of Mr. Padilla's disability.  Contrary to Mr. Padilla's argument, this opinion does not

state a "specific, functional limitation" because it offers no insight as to the activities Mr. Padilla

can perform despite his impairment (*e.g.* ability to lift or carry, sit or stand, kneel or crawl, etc.)

or the particular side effects that cause the limitation.  (*See* Reply 2, ECF No. 23 (arguing "Dr.

White's" opinion restricted Mr. Padilla to less than full time work)); *Cowan*, 552 F.3d at 1189.

This opinion bears great semblance to the treating physician's opinion in *Cowan* that the

claimant may never return to work and the consultative physician's opinion in *Busby* regarding

the severe impact the claimant's mental impairments had on her general ability to work.  *Cowan*,

552 F.3d at 1189; *Busby*, 325 F. Supp. 2d at 1225-27.

      Moreover, Nurse Practitioner Bojanower's statement mentions the side-effects of

chemotherapy and dates from the period in which Mr. Padilla received chemotherapy.  (R. 499.)

The record makes clear Mr. Padilla received chemotherapy for less than one year.  (R. 24, 38.)

Nurse Practitioner Bojanower does not provide an opinion subsequent to chemotherapy

treatment.  Thus, the statement does not reflect an opinion about one of Mr. Padilla's medically

determinable impairments.  20 C.F.R. §§ 404.1509, 416.909.  *See Barnhart v. Walton*, 535 U.S.

212, 222-23 (2002) (holding the Act requires both the alleged impairment and inability to work

to last for at least twelve months).  Furthermore, the ALJ's opinion already addressed the fact

that Mr. Padilla completed cancer treatment successfully in less than twelve months and thus

discredits the underlying claim that the chemotherapy disabled Mr. Padilla.  (R. 24.)

Additionally, the ALJ considers the lack of continuing pain medication as evidence that Mr.

Padilla's remaining pain has subsided.  (R. 25.)

      Given that Nurse Practitioner Bojanower's opinion comes from a non-acceptable medical

source, covers an issue reserved to the Commissioner, and concerns cancer treatment that the

ALJ determined concluded successfully in under a year, any remand would simply result in the same conclusion.  The Tenth Circuit has held that harmless error analysis reflects sound policy by avoiding "unwarranted remands [that] needlessly prolong[] administrative proceedings." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005).  Thus, the undersigned RECOMMENDS the District Judge find Nurse Practitioner Bojanower's statement does not constitute a medical opinion, intrudes on a matter reserved to the Commissioner, and relates to Mr. Padilla's chemotherapy, which the ALJ determined constitutes a non-medically determinable impairment; therefore, the ALJ's error in failing to discuss and weigh the statement is harmless.

### 2. State Agency Physicians' and Dr. Monson's Opinions

Mr. Padilla also argues that the Court should remand the ALJ's decision because the state agency physicians and Dr. Monson based their opinions in part on the erroneous notion that Mr. Padilla had stage I instead of stage II colon cancer.  (Pl.'s Br. 9, ECF No. 14.)  Both the agency physicians' Disability Determination reports identify Mr. Padilla as reporting stage I colon cancer in his disability application.  (R. 79, 101.)  Similarly, Dr. Monson's report also identifies Mr. Padilla as having a history of stage I colon cancer based on Mr. Padilla's own report.  (R. 528.)  Mr. Padilla argues that because these opinions rest on an erroneous premise and the ALJ gave substantial and great weight respectively to these opinions, substantial evidence does not support the ALJ's decision.  (Pl.'s Br. 9, ECF No. 14.)

Whether the agency physicians thought Mr. Padilla had stage I or stage II colon cancer remains unclear, because despite having noted Mr. Padilla self-identified as stage I, they reviewed Dr. Hansen's records that identified the cancer as stage II.  (R. 80, 82, 102-03, 105.)  Even if the agency physicians mistakenly believed Mr. Padilla had stage I cancer, however, Mr. Padilla fails to allege any specific adverse impact such an erroneous belief could have had on the

agency physicians' or the ALJ's RFC findings. "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012)). Nothing in the record indicates how a stage II diagnosis would change Mr. Padilla's RFC. Given Mr. Padilla's successful cancer treatment (R. 25, 490), the impact of the staging prior to treatment remains unclear. Mr. Padilla's claim that "[c]learly, the more extensive surgery and the addition of chemotherapy would result in more side effects and impairment" lacks any citation to the record. (Reply 4, ECF No. 23.) If giving greater weight to the medical opinion would not have helped the claimant anyway, then the claimant suffers no prejudice from the ALJ's failure to weigh the opinion. *See Keyes-Zachary*, 695 F.3d at 1163 (finding ALJ's alleged failure to state explicitly what weight he assigned to a consultative psychological evaluation reflected harmless error because giving greater weight to the opinion would not have helped claimant). Thus, absent a specific showing of how such an erroneous belief negatively affected the agency physicians' opinions or the ALJ's RFC findings that Mr. Padilla has the ability to perform light work, the undersigned finds no resulting prejudice to Mr. Padilla.

Mr. Padilla also takes issue with the agency physicians' and Dr. Monson's opinions because they neglect his Crohn's enteritis as well as the scarring left on his lungs from his bout with pneumonia that resulted in shortness of breath and fatigue. (Reply 4-5, ECF No. 23.) Regarding his Crohn's, Mr. Padilla fails to explain the impact of the disease on the agency physicians' and Dr. Monson's opinions, and fails to report the disease on his disability application or raise the disease at his disability hearing. While the ALJ has a duty to ensure an adequately developed record during the disability hearing, such a duty pertains only to the issues

raised.  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).  The duty to raise the issues lies

with the claimant.  *Id.*  Mr. Padilla does not identify Crohn's in his application.  (R. 222.)  Mr.

Padilla's representative does not identify Crohn's in the pre-hearing Representative Brief given

to the ALJ.  (R. 278.)  Neither Mr. Padilla nor his representative make any mention of Crohn's at

the ALJ hearing.  (R. 29-78.)  Under these circumstances, Mr. Padilla failed to raise the issue.

Moreover, the record documents only three mentions of Crohn's disease:  in his October

14, 2011 report, Dr. Nowers who performed the CT, noted the possibility of either cancer or

Crohn's; an October 21, 2011 pathology report noted a microscopic examination "raise[s] the

possibility of underlying Crohn's enteritis"; and a November 30, 2011 medical report by Dr.

Hansen, Mr. Padilla's oncologist, notes "some Crohn's enteritis."  (R. 292, 457, 429.)  The

agency physicians had access to these reports (*see* R. 80-82, 102-04); thus, Mr. Padilla has not

made a sufficient showing that the agency physicians neglected evidence of his Crohn's in

making their findings.  Furthermore, none of these records reflects a definitive diagnosis.  Dr.

Monson specifically stated he did not have access to these reports during his examination of Mr.

Padilla.  (R. 532.)  Thus, when the ALJ gave Dr. Monson's opinion "great weight," that included

the understanding he had not reviewed all of the records.  (R. 26.)  Therefore, the ALJ already

weighed Dr. Monson's opinion with the limitations on his opinion in mind.

Furthermore, Mr. Padilla alleges that Crohn's "causes pain and diarrhea, and other

digestive tract issues."  (Pl.'s Br. 8, ECF No. 14; Reply 4, ECF No. 23.)  The record remains

unclear as to whether Mr. Padilla actually experienced these symptoms, however.  For instance,

in the November 30, 2011 report, Dr. Hansen noted that Mr. Padilla experienced "no nausea,

vomiting, diarrhea, melena, or constipation," a fact Mr. Padilla confirmed at the ALJ hearing.

(R. 430, 67.)  By contrast, Mr. Padilla testified about his pain, diarrhea, and digestive tract issues

at the hearing.  (R. 39-41, 50-51, 66-67, 69.)  Thus, even if the ALJ did not attribute the cause of these symptoms to Crohn's, he did consider the impact of these symptoms on the RFC.  The ALJ specifically found that while Mr. Padilla could perform light unskilled work, such work could not require "working in an area without a restroom nearby for quick access, and [Mr. Padilla] must have the option to take the maximum number of restroom breaks allowed" or "[p]reclusion of the option to drink/hydrate on the job."  (R. 22-23.)  Thus, because Mr. Padilla fails to identify any additional symptoms flowing from his Crohn's, nothing in the record indicates that the ALJ's reliance on the agency physicians and Dr. Monson's opinions—even if incomplete—prejudiced Mr. Padilla.  "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart,* *379 F.3d 945, 947 (10th Cir. 2004)* (holding that substantial evidence supported ALJ's RFC finding because none of the medical evidence conflicted with ALJ's conclusions that claimant could perform light work).

Regarding Mr. Padilla's pneumonia, the record shows, and Mr. Padilla does not dispute, that the disease lasted for only about a month after his colon surgery.  (R. 373-74.)  Mr. Padilla's lungs had improved by January 2012, when only "minimal" scarring persisted in his lungs.  (R. 378.)  Moreover, the biggest side effect of his pneumonia, shortness of breath, also vastly improved by January 2012, when he reported "no difficulty of breathing."  (R. 379.)  When Mr. Padilla saw Dr. Monson in September 2013, his oxygen saturation level registered 95%, and he only reported shortness of breath with heavy exertion, which Mr. Padilla stated "does not affect his ability to work."  (R. 529.)  For an impairment to qualify as a medically determinable impairment under the Act, it must last for a continuous period of at least twelve months.  *20 C.F.R. §§ 404.1509*, 404.1527(a)(1), 416.909, 416.927(a)(1).  Hence, Mr. Padilla's pneumonia

and its symptoms do not qualify as medically determinable impairments and do not factor into the disability analysis as a result.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.927(a)(4)(ii).  Finally, Mr. Padilla fails to explain how the agency physicians and Dr. Monson's alleged failure to consider his lung scarring and shortness of breath negatively affected the ALJ's RFC findings.

Because Mr. Padilla fails to identify any resulting prejudice from the ALJ's reliance on the agency physicians' and Dr. Monson's opinions, the undersigned RECOMMENDS the District Judge find that substantial evidence supports the ALJ's decision.

**C.      Substantial Evidence Supports the ALJ's Findings that Mr. Padilla Can Perform Light Work**

Next, Mr. Padilla argues that the evidence in the record fails to support the ALJ's RFC finding that Mr. Padilla can perform light work subject to certain limitations.  (Pl.'s Br. 9-10, ECF No. 14.)  Mr. Padilla objects to the ALJ's findings that he can sit for up to fifteen minutes at a time but can stand or walk for up to forty-five minutes at a time.  (Pl.'s Br. 10, ECF No. 14.)  A claimant's RFC reflects the most the claimant can do with respect to physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Mr. Padilla argues he testified at the hearing that he could not stand for more than five to ten minutes and that Dr. Monson actually noted this limitation during his consultative examination by limiting him to a "desk job" or sedentary work.  (Pl.'s Br. 10, ECF No. 14.)  Mr. Padilla argues the ALJ's failure to reconcile Dr. Monson's opinion with the ALJ's finding that Mr. Padilla can perform light work constitutes reversible error because had the ALJ limited Mr. Padilla to sedentary work, given his age and education, Medical-Vocational guideline 201.14 would have directed a finding of disabled.  (*Id.*)

The Commissioner does not dispute that had the ALJ limited Mr. Padilla to sedentary

work, the guidelines would have directed a finding of disability but argues that Dr. Monson did

not expressly limit Mr. Padilla to sedentary work.  (Def.'s Br. 12-14, ECF No. 22.)  Instead, Dr.

Monson noted in his report that Mr. Padilla rose from sitting without assistance, had a normal

gait, could heel-toe and tandem walk, could hop, and had a normal range of motion.  (Def. Br.

12, ECF No. 22.)  Moreover, the Commissioner points out that Mr. Padilla reported limitations

with both sitting and standing, that the ALJ required Mr. Padilla to have the option of changing

positions to provide maximal comfort, and that the ALJ reasonably relied on the VE's testimony

that a significant number of jobs exist in the national economy for someone with Mr. Padilla's

RFC.  (Def.'s Br. 13-14, ECF No. 22.)

Dr. Monson's opinion did not limit Mr. Padilla to sedentary work.  Dr. Monson found Mr.

Padilla could stand "from a sitting position without assistance and had no difficulty getting up

and down from the exam table," could "walk on heels and toes," could "hop on one foot

bilaterally," and had a normal range of motion with the exception of his right thumb.  (R. 531.)

While Dr. Monson also found that Mr. Padilla had "abdominal pain and pain radiating to his right

groin" and stated that such limitations would not preclude him from performing a desk job,

nothing in his opinion suggests he concluded Mr. Padilla could *only* perform a desk job.  (R.

532.)  Dr. Monson merely stated that the pain would limit Mr. Padilla's "lifting, bending, and

squatting motions," a conclusion consistent with the ALJ's RFC findings that Mr. Padilla cannot

lift or carry more than eight and a half pounds with his left upper extremity on more than an

occasional basis or perform more than occasional stooping, bending, twisting, or squatting.  (R.

22, 532.)  The RFC reflects the *most* a claimant can do.  20 C.F.R. §§ 404.1545, 416.945.  Thus,

a doctor finding Mr. Padilla's colon cancer "would not limit him from performing a desk job,"

26

(R. 532), does not dictate an ALJ finding Mr. Padilla can *only* perform a desk job.  This discrepancy does not detract from the ALJ's conclusion.  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Howard*, 379 F.3d at 949.

While Mr. Padilla did testify that he can stand for no more than five to ten minutes at a time, he also testified he could stand for up to forty minutes at a time during doctor's appointments, at grocery stores, or when he otherwise has to wait.  (*Cf.* R. 49, 73.)  During Dr. Monson's examination, Mr. Padilla claimed he could stand for thirty minutes.  (R. 528.) Moreover, Mr. Padilla testified that he sometimes experiences pain with sitting, which the ALJ credited and incorporated into his findings.  (R. 25-26, 48.)  The state agency physicians concluded Mr. Padilla can stand or walk up to six hours a day, and the ALJ gave their opinions substantial weight.  (R. 25, 84, 107.)  Furthermore, the ALJ's RFC specifically requires Mr. Padilla have the option to perform his work either standing or sitting.  (R. 22.)  While the record contains discrepancies, the ALJ has the burden of resolving these discrepancies, not the Court. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995) (holding the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Secretary"); *Richardson v. Perales*, 402 U.S. 389, 399 (holding trier of fact has duty to resolve conflicts in medical evidence). Additionally, the VE concluded a person with Mr. Padilla's RFC could perform the specific light work identified.  (R. 75-76.)  The ALJ adopted that finding.  (R. 27.)  Thus, because Dr. Monson's opinion does not prevent the ALJ from finding that Mr. Padilla can perform light work, the undersigned RECOMMENDS the District Judge find that substantial evidence supports the ALJ's finding that Mr. Padilla can perform light unskilled work subject to the RFC restrictions imposed.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS the District Judge find that substantial evidence supports the Commissioner's decision and that the Commissioner applied the correct legal standards and affirm the Commissioner's decision in this case.

The Court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 14th day of March, 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge